NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GREG AMADOR-CREANE, *Appellant.*

No. 1 CA-CR 15-0052
FILED 11-24-2015

Appeal from the Superior Court in Maricopa County
CR2011-153124-001
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

By Nicole Farnum
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Maurice Portley and Chief Judge Michael J. Brown joined.

**G E M M I L L**, Judge:

¶1        Greg Amador-Creane appeals from his convictions and sentences for one count of first degree felony murder, a class 1 dangerous felony, dangerous crime against children, and domestic violence offense; one count of child abuse, a class 2 dangerous felony, dangerous crime against children, and domestic violence offense; and one count of child abuse, a class 3 felony and domestic violence offense.  Amador-Creane's counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), stating she has searched the record and found no arguable question of law and requesting that this court examine the record for reversible error.  Amador-Creane was permitted to file a *pro se* supplemental brief in which he raises several arguments.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).

¶2        This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and 13-4033.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3        "We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the convictions." *State v. Powers*, 200 Ariz. 123, 124, ¶ 2 (App. 2001).

¶4        On October 13, 2011, an incident occurred between the two-year-old, J.M., and Amador-Creane, resulting in J.M.'s death.  At the time, J.M.'s mother ("Mother") was dating Amador-Creane.  All three were living at Amador-Creane's residence with several other members of Amador-Creane's family.  At 7:00 am on October 13, Mother checked on J.M. and then left him in the care of Amador-Creane.  At trial, Mother testified that she and Amador-Creane were the ones who typically took care of J.M.

¶5        Around 9:30 am, Mother called Amador-Creane to ask about J.M.  She testified that Amador-Creane "didn't seem quite himself," but indicated J.M. was awake and fed.  Then, sometime around 10:30 am, Amador-Creane called 9-1-1 and requested paramedics because J.M. was unresponsive.  Paramedics, fire personnel, and police officers responded to the scene.  J.M. was taken to the hospital, where it was determined that he had suffered a severe head injury.  He was stabilized, and transferred to another facility.  At some point afterward, two brain death evaluations were performed on J.M. and it was determined that he was clinically brain dead.

¶6            During this time, police undertook an investigation to determine the cause of J.M.'s injuries. Detective Jerry Laird ("the detective") interviewed Amador-Creane at the hospital. Afterward, the detective decided that Amador-Creane should be transported to the police station for an audio and video-recorded interview. At the station, Amador-Creane was read his *Miranda* rights, interviewed, and charged. Portions of the interview were shown at trial.

¶7            After trial, a jury found Amador-Creane guilty of Count 1, first degree felony murder, Count 2, child abuse, and Count 3, reckless child abuse. The jury also found that the first two counts were dangerous crimes against children and that all three counts were domestic violence offenses. Amador-Creane was sentenced to life in prison without the possibility of release until completion of 35 years on Count 1, 15 years flat on Count 2, and 3 years on Count 3, to be served concurrently, with 1,191 days of presentence incarceration credit.

## DISCUSSION

### I.      Alleged Inconsistent Witness Testimony

¶8            Amador-Creane first asserts that the testimony of various witnesses during the trial was inconsistent or contradictory. But questions of witness credibility and consistency of testimony are appropriately resolved by the jury. We will not disturb a verdict based upon conflicting evidence when there is substantial evidence to support the verdict. *State v. Hughes*, 104 Ariz. 535, 538 (1969). The witnesses that Amador-Creane contends provided inconsistent testimony nevertheless provided substantial evidence to support the verdicts. No reversible error occurred by virtue of some witnesses testifying inconsistently.

### II.     Alleged Offer Tendered

¶9            Second, Amador-Creane argues "it was stated by [the State] that there was an offer tendered however I never received o[r] even saw for that matter any document for me to accept or deny." If Amador-Creane is correct that a plea agreement had been offered by the State and defense counsel did not communicate the offer to him, he may raise claims of ineffective assistance of counsel in a post-conviction proceeding under Arizona Rule of Criminal Procedure 32. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002) (holding that ineffective assistance of counsel claims will not be considered on direct appeal and, instead, must be presented in Rule 32 proceedings).

### III.     Alleged Contact with Jury Members

¶10          Third, Amador-Creane takes issue with the State's two incidents of alleged contact with jury members.  Arizona Rule of Criminal Procedure 19.4 requires the court to "admonish the jurors not to converse among themselves or with anyone else on any subject connected with the trial."

¶11          Amador-Creane points to two incidents he alleges constituted improper communication with the jury.  The first incident involved a juror possibly witnessing a discussion between the prosecutors and the State's case agent.  The second incident occurred when a prosecutor was walking in and out of the victim room while waiting for a witness.  Once, when the prosecutor opened the door to the victim room, two jurors came around the corner, and the prosecutor and the jurors startled each other.

¶12          The State alerted the trial court and Amador-Creane's counsel on both occasions.  After listening to the prosecutor's accounts, the trial court asked whether Amador-Creane's counsel wanted the court to take any specific action.  Amador-Creane's counsel did not raise any challenge and the trial court did not find that either occasion called for remedial action.

¶13          On this record, we discern no basis to conclude the trial court abused its discretion or that Amador-Creane was prejudiced by any inadvertent contact the prosecutors may have had with some jurors.  Further, because the issue was waived at the trial level, it cannot be successfully raised on appeal. *See State v. Savchick*, 116 Ariz. 278, 282 (1977) (holding the issue of prejudice was waived at trial and could not be raised on appeal when defense counsel declined to take action on a report that a juror overheard a prosecutor's conversation with the bailiff).  We therefore find no error.

### IV.     Denial of Rule 20 Motion

¶14          Finally, Amador-Creane asserts the trial court erred in denying his motion for judgment of acquittal on Count 3, child abuse, under Arizona Rule of Criminal Procedure 20(a) ("Rule 20").  Rule 20 states that "the court shall enter a judgment of acquittal of one or more offenses charged in an indictment, information or complaint after the evidence on either side is closed, if there is no substantial evidence to warrant a

conviction." Ariz. R. Crim. P. 20(a). We review de novo a trial court's denial of a Rule 20 motion. *State v. Harm*, 236 Ariz. 402, 406, ¶ 11 (App. 2015).

**¶15** Amador-Creane's argument is unpersuasive. In support of its argument that Amador-Creane delayed seeking medical attention for J.M., the State presented Amador-Creane's recorded statements to the detective that he "was scared to call" for help, even though he acknowledged that he noticed symptoms before 10:00 that morning. The detective testified that the 9-1-1 call was not made until 10:30 am. Additionally, the State presented evidence from multiple medical professionals who testified that prompt medical attention would have increased the likelihood of a better outcome for J.M. The record before us therefore shows substantial evidence of reckless child abuse, as charged in Count 3. The trial court did not abuse its discretion in denying Amador-Creane's Rule 20 motion.

**¶16** Having considered defense counsel's brief and Amador-Creane's supplemental brief, and having examined the record for reversible error, *see Leon*, 104 Ariz. at 300, we find none. The evidence presented supports the convictions and the sentences imposed fall within the range permitted by law. As far as the record reveals, Amador-Creane was represented by counsel at all stages of the proceedings, and these proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

**¶17** Pursuant to *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984), counsel's obligations in this appeal have ended. Counsel need do no more than inform Amador-Creane of the disposition of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. Amador-Creane has thirty days from the date of this decision in which to proceed, if he desires, with a *pro se* motion for reconsideration or petition for review.

**CONCLUSION**

¶18        The convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama